IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSANA BARRERA HOLGUIN,

    Plaintiff,

v.                                  No. 2:24-CV-00455-WJ-KRS

UNITED STATES OF AMERICA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING SUMMARY JUDGMENT**

THIS MATTER is before the Court on Defendant United States' Motion for Summary Judgment (the Motion). **Doc. 24.** The Court has subject matter jurisdiction under § 1346(b), and GRANTS summary judgment because Plaintiff's Federal Tort Claims Act (FTCA) claim is time-barred as a matter of law and equitable tolling does not apply.

**BACKGROUND**

The following facts are drawn from the record and are either undisputed or, where disputed, viewed in the light most favorable to Plaintiff as the nonmoving party. Plaintiff's complaint arises from an automobile collision on Saturday, September 4, 2021, in Las Cruces, New Mexico. Plaintiff was driving eastbound in the leftmost lane of University Avenue when another vehicle exited the off-ramp of Interstate-10 and attempted a U-turn at the median. The vehicle had not completed the U-turn when Plaintiff's car struck the left rear side of its bumper. *See* **Doc. 24-1 at 2 ¶ 8–9**.

The other vehicle was driven by Lorena Kaplan. **Doc. 1 at 2 ¶ 6**. Ms. Kaplan was employed by the Department of Health and Human Services (HHS), though her sworn declaration

states that she was not scheduled to work on the day of the collision.[1]  **Doc. 24-1 at 1 ¶ 3**.  After the collision, Plaintiff and Ms. Kaplan did not communicate or exchange any information with one another.  **Pl.'s St. of Mat. Facts (Pl.'s SOMF)**, **Doc. 25, ¶ 9**.  A Las Cruces Police Department (LCPD) officer responded to the scene and collected the drivers' identification information.  Ms. Kaplan provided her Maryland driver's license and federal government identification card to the officer.[2]  **Def.'s Ex. 4, Doc. 24-4, at 4**.

Shortly after the accident, Plaintiff retained counsel, who conducted an investigation of the accident, the drivers, and the vehicles involved and determined that the vehicle Ms. Kaplan was driving was rented from Enterprise.  **Pl.'s SOMF ¶ 1**.  Plaintiff's counsel contacted Enterprise and was put in contact with an insurance adjuster, Allison Sandidge.  Ms. Sandidge's communications with Plaintiff's counsel did not reveal that an employer provided the rental car or that Ms. Kaplan was a federal employee.  *Id.* **¶ 2**.  In her written and telephonic communications with counsel, Ms. Sandidge "represented herself as an adjuster for 'RCS Rental Services' who handled claims on behalf of Ace American Insurance company."  *Id.* **¶ 2; Pl.'s Ex. 7, Doc. 25-7, ¶ 3, Pl.'s Ex. 4, Doc. 25-4**.

The first indication counsel received of possible employer involvement in the car rental transaction appeared in a letter Ms. Sandidge sent counsel on November 27, 2023, which stated, "Rental Claims Services (RCS) handles Business Travel (BTI) claims on behalf of Ace American Insurance involving vehicles rented from Enterprise."  **Pl.'s SOMF ¶ 4; Pl.'s Ex. 5, Doc. 25-5**.  Also on November 27, 2023, Ms. Sandidge sent counsel an email that referenced an "excess

---

[1] Plaintiff does not admit this fact, although, after deposing Ms. Kaplan and Ms. Jones, she presents no evidence in opposition.  *See* **Doc. 25 at 3 ¶ 5 (Pl.'s Resp. Def.'s Proposed Undisputed Facts); Doc. 29 at 1**.  In any event, the Court's disposition of the Motion on statute of limitations grounds does not depend on whether Ms. Kaplan was on duty at the time of the accident.

[2] After limited discovery, including deposing Ms. Kaplan and her passenger, Plaintiff presents no evidence rebutting this assertion and it is therefore uncontroverted on the existing record.  Even if the fact were reasonably disputed, it is not material to the Court's summary judgment analysis.

carrier"[3] and a proposed settlement agreement that requested the release of claims against "EAN Holdings, LLC, Rental Claims Services, Lorena Kaplan, US Government Department of Homeland Secureity [sic], Ace American Insurance." **Pl.'s Ex. 6, Doc. 25-6, at 1**.

Prior to November 27, 2023, Ms. Sandidge "consistently and affirmatively represented that the only available insurance coverage for the subject accident was that which was available through Ace American Insurance – the insurance company that provided policies to customers through Enterprise." **Pl.'s SOMF ¶ 6**. Plaintiff states that the representations were made "during telephone conversations between Ms. Sandidge" and counsel's staff, though the record does not specify when these prior communications occurred or provide documentation thereof. *Id.* **¶ 6**.

In discussions after November 27, 2023, Ms. Sandidge confirmed Ms. Kaplan was employed by HHS and acting "in the course and scope of her employment" at the time of the collision. **Pl.'s SOMF ¶ 7**. Ms. Sandidge also confirmed that Ms. Kaplan's vehicle was "rented by or on behalf of the federal government." *Id.***; Decl. of Daniela Labinoti, Pl.'s Counsel (Labinoti Decl.), Doc. 25-7, ¶ 13**. During these further conversations, Plaintiff's counsel learned that Ms. Sandidge "provided notice of Plaintiff's claims and demand for damages to [HHS] on August 4, 2023." **Pl.'s SOMF ¶ 8; Labinoti Decl. ¶ 9**. On January 15, 2024, counsel filed an administrative tort claim with HHS on Plaintiff's behalf. On March 15, 2024, HHS finally denied the claim. *Id.* Plaintiff filed the instant lawsuit on May 13, 2024.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[3] Plaintiff's counsel's sworn declaration recites the reference as "excess counsel," which the Court takes to be a typographical error. **Pl.'s Ex. 7, Doc. 25-7, ¶ 7;** *see also* **Pl.'s SOMF ¶ 6**. In the relevant exhibit, the emails between Ms. Sandidge and members of the law firm representing Plaintiff are partially cut off but two such emails appear to refer to "excess carrier" and one of those emails is dated November 27, 2023. **Pl.'s Ex. 4, Doc. 25-4, at 1, 3**.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999) (quotation marks omitted); Fed. R. Civ. P. 56(a).

"When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001). "If the moving party meets this burden, the non-moving party" must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Shapolia v. Los Alamos Nat'l Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

A dispute over a material fact is "genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020). "In reviewing a motion for summary judgment," the court "review[s] the facts and all reasonable inferences those facts support in the light most favorable to the nonmoving party." *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019) (brackets omitted) (quoting *iMatter Utah v. Njord*, 774 F.3d 1258, 1262 (10th Cir. 2014)).

## DISCUSSION

### I. Plaintiff's Claim is Time-Barred Under the FTCA

A tort claim against the United States must be filed with the appropriate federal agency within two years after the claim accrues and within six months of "notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b); *Houston v. U.S. Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987) (explaining that, although the statute is "phrased in the

disjunctive," a claimant must satisfy both its conditions).  Section 2401's time limitations are not jurisdictional and thus are subject to equitable tolling.  *United States v. Wong*, 575 U.S. 402, 421 (2015).

Plaintiff does not dispute that she filed her administrative tort claim on January 15, 2024, over two years after the accident — the point at which her claim accrued — and outside the two-year statutory limitations period.  *See* **Pl.'s SOMF ¶¶ 7–8**; *Cannon v. United States*, 338 F.3d 1183, 1190 (10th Cir. 2003) ("An FTCA tort claim accrues on the date of the injury's occurrence.").  Therefore, her claim is untimely under the FTCA.  28 U.S.C. § 2401(b).

## A. Equitable Tolling Does Not Apply

Although there is no dispute that her claim is untimely, Plaintiff contends the limitations period should be equitably tolled because Ms. Kaplan's federal employment status was not revealed prior to Ms. Sandidge's November 27, 2023, letter, after the limitations period expired, and in telephone conversations between Ms. Sandidge and counsel's staff, Ms. Sandidge represented that the only available coverage was through Enterprise's insurer.  **Doc. 25 at 17–19, 20 n.2; Labinoti Decl. at 1–3 ¶¶ 2–14**.

"Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *overruled on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018) (en banc).  Equitable tolling applies only when the plaintiff shows "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstances stood in h[er] way." *Chance v. Zinke*, 898 F.3d 1025, 1034 (10th Cir. 2018).  Extraordinary circumstances must be both beyond the litigant's control and unavoidable even with diligence.  *United States v. Daniels*, No. 22-4084, 2023 WL 6629756, at *2 (10th Cir. Oct. 12, 2023).

A showing of extraordinary circumstances may include evidence that "the defendant's conduct rises to the level of active deception," that the "plaintiff has been lulled into inaction by a defendant," or that "despite all due diligence a plaintiff is unable to obtain vital information bearing on the existence of her claim." *Impact Energy Resources, LLC v. Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012) (citing *United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001)); *Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998)) (brackets omitted). A court's discretion to equitably toll a statute of limitations must be exercised "sparingly," *Chance*, 898 F.3d at 1034, and acknowledge the "general purpose" of limitations statutes, which is "to protect defendants against stale or unduly delayed claims," *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 228 (2012).

Plaintiff has not established either requirement.

### 1. Plaintiff Has Not Shown Extraordinary Circumstances

The summary judgment record demonstrates that Ms. Kaplan's employment status was not revealed to Plaintiff or her counsel prior to November 27, 2023. The record further shows that Ms. Sandidge did not readily supply that information in any communications with Plaintiff's counsel until that point, despite its potential relevance to Plaintiff's insurance claim. Perhaps the strongest fact in Plaintiff's favor is that Ms. Sandidge alerted HHS to Plaintiff's claim in August 2023. **Pl.'s SOMF ¶ 8; Labinoti Decl. ¶ 9**. Thus, the record suggests Ms. Sandidge knew of Ms. Kaplan's federal employment within the FTCA's limitations period but did not convey that knowledge to Plaintiff before the period expired.

Plaintiff's counsel further asserts that Ms. Sandidge "consistently and affirmatively told my office that the only available coverage" was that available through the Enterprise insurer. **Labinoti Decl. ¶ 7**. Even accepting Plaintiff's account of those communications as true, however,

they do not rise to the level of extraordinary circumstances required for equitable tolling.

First, Plaintiff does not contend that Ms. Sandidge, as adjuster for the Enterprise insurer, had any duty to investigate or disclose other potential sources of liability or coverage available to Plaintiff.  Mere silence does not amount to affirmative misrepresentation, particularly where there is no duty to disclose.  *See Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1471 (6th Cir. 1988) (in the antitrust context; "Mere silence, where there is no duty to speak, does not toll the statute [of limitations].") (quoting *Gaetzi v. Carling Brewing Co.*, 205 F. Supp. 615, 622 (E.D. Mich. 1962)).  Second, the statements attributed to Ms. Sandidge may well have been literally true from an insurance adjuster's perspective.  The FTCA is not a form of insurance coverage; it is a statutory waiver of sovereign immunity allowing certain tort claims against the United States.  *See Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) (citing 28 U.S.C. § 1346(b)).  Insurance adjustors typically discuss policy coverage, not statutory liability frameworks.  At most, the facts cited by Plaintiff suggest that Ms. Sandidge did not identify a potential defendant for plaintiff, a responsibility that ordinarily rests with the plaintiff's counsel, not an opposing party's insurer.

Third, the circumstances here are not comparable to those courts have found to be extraordinary because a defendant actively misled the plaintiff or concealed material information necessary to bring suit.  For example, in *Chance*, 898 F.3d at 1034–35, the Tenth Circuit found that extraordinary circumstances might exist where the government failed to inform the plaintiff landowner's predecessors-in-interest that it approved drilling permits and concealed its failure to undertake an environmental-impact assessment.  Thus, in *Chance*, the government had concealed material facts that would have allowed the plaintiff to bring suit within the relevant limitations period.  *See id.* (but declining to apply equitable estoppel for absence of due diligence); *see also*

7

*Donovan v. Hahner, Foreman & Harness, Inc.*, 736 F.2d 1421, 1427 (10th Cir. 1984) (equitable tolling was appropriate where the defendant employer "deliberately concealed" fact that employee was discharged as opposed to laid off for purposes of a discriminatory discharge claim).  Here, however, Plaintiff was aware of the facts conceivably establishing an injury at the time of the accident and subsequently failed to make a reasonable investigation that would allow her to bring suit.

The Court assumes Plaintiff accurately recounts that counsel was told available coverage was limited to Enterprise's insurer.  Be that as it may, the record does not suggest that Ms. Sandidge made any affirmative misrepresentation about Ms. Kaplan's employment status, nor that she attempted to conceal it.  In short, while Ms. Sandidge did not volunteer information about Ms. Kaplan's federal employment status, Plaintiff has not shown that any conduct by the insurer rose to the level of deception or concealment that would constitute extraordinary circumstances.

**2. Plaintiff Has Not Demonstrated Due Diligence**

Equitable tolling also requires a showing that the plaintiff diligently pursued her rights. Plaintiff has not made that showing here.

Plaintiff's counsel began representing Plaintiff shortly after the September 4, 2021, collision and states that she "investigated the crash, the drivers, and the involved vehicles." **Labinoti Decl. ¶ 7**.  But nowhere during the nearly two-year limitations period does Plaintiff assert that counsel inquired into Ms. Kaplan's employment status.  Plaintiff asserts that Lorena Kaplan "did not identify herself as an employee of [HHS] at the time of the crash – either to Plaintiff or to the Officer of the [LCPD] who responded to and investigated the crash . . . ." **Doc. 1 at 4–5 ¶ 14**. But, as discussed earlier, silence, without more, does not equate to concealment, and this allegation does not suggest that Ms. Kaplan affirmatively misrepresented her employment, let alone that

Plaintiff inquired.  *See also* **Pl.'s SOMF ¶ 9** ("Both Plaintiff and [Ms.] Kaplan elected not to communicate directly with one another after the subject crash.").

Courts have repeatedly held that due diligence includes making reasonable efforts to determine whether a potential tortfeasor is a federal employee.  *Norman v. United States*, 467 F.3d at 776 ("At a minimum, due diligence requires reasonable efforts to learn the employment status of the defendant."); *see also T.L. ex rel. Ingram v. United States,* 443 F.3d 956, 964 (8th Cir. 2006), *abrogated on other grounds by United States v. Wong*, 575 U.S. 402 (2015) (no due diligence where plaintiff did not inquire into employment status of her doctor and that information was not concealed); *Gonzalez v. United States,* 284 F.3d 281, 291–92 (1st Cir. 2002) (same); *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 744 (4th Cir. 1990) ("[P]laintiffs have an affirmative duty to inquire as to the legal identity of the defendant.").  Although Plaintiff alleges cursorily that she "investigated the crash, the drivers, and the involved vehicles," **Labinoti Decl. ¶ 2**, the record does not describe, let alone substantiate, what that investigation entailed.

Plaintiff argues that "because it became clear during pre-litigation that the claim was going to settle, there was no reason to file suit" and therefore formal discovery was not conducted.  ***Id.* ¶ 14**.  But that explanation does not demonstrate diligence.  A Plaintiff's strategic decision not to file suit or pursue discovery does not excuse the obligation to investigate potential defendants before the statute of limitations expires.

Plaintiff also contends that the United States' cases addressing medical malpractice claims are distinguishable because in that context, it is relatively common for "ostensibly private doctors" to be "deemed federal employees" for purposes of the FTCA.  *See* **Doc. 25 at 20**.  Plaintiff argues that in the automobile accident context, the same likelihood is not present, and therefore counsel had little reason to suspect federal involvement.

The Court is somewhat sympathetic to "the quandary in which a plaintiff may find himself if he has no reason to suspect that the defendant driver is a government employee." *See Houston*, 823 F.2d at 901. But absence of suspicion does not amount to extraordinary circumstances, nor does it support the exercise of due diligence. Moreover, the possibility that a potential tortfeasor may be a federal employee is not limited to any particular area of practice. Nothing in the record prevented Plaintiff from pursuing claims against Ms. Kaplan or from reasonably inquiring into her employment status within the limitations period.

Because Plaintiff has not shown either extraordinary circumstances or diligent pursuit of her rights, equitable tolling is not warranted.

### CONCLUSION

Because this action was filed outside the statutory limitations period and equitable tolling does not apply, the claim is time-barred. Defendant's Motion for Summary Judgment is therefore GRANTED.

SO ORDERED.

/s/_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

10